MINUTE ENTRY
ROBY, M.J.
7/22/2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORLANDO SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-14738** |
| **TRANSOCEAN OFFSHORE USA, INC., ET AL.** | **SECTION: "D" (4)** |

### JUDGE KAREN WELLS ROBY, PRESIDING

LAW CLERK:                  Destinee N. Andrews
COURT REPORTER/RECORDER:    Sandra Minutillo

Appearances:      **Thomas Massa Discon and Robert Lansden** for Plaintiff.
                      **James Aristide Holmes, Daniel John Dysart, and Kathryn Jessica Johnson** for Defendants.

### MINUTE ENTRY AND ORDER

Before the Court is a **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (R. Doc. 45)** filed by the Plaintiff seeking the Court (1) order Defendant Transocean Offshore USA, Inc. ("Transocean") to pay reasonable expenses, including attorney's fees, in connection with the filing of the present Motion; (2) find that the facts contained within the "Top-Set Level II Investigation Reports" that were previously withheld by Transocean be deemed admissible as evidence herein; and (3) allow Complainant an additional sixty (60) days to pursue discovery concerning the subjects addressed and referenced in the "Top-Set Level II Investigation Reports." The motion is opposed. R. Doc. 57. The Court heard oral argument via video conference on July 22, 2020.

MJSTAR: 00:43

## I. Background

On December 23, 2019, Plaintiff filed his maritime action and seaman complaint against Defendants for injuries sustained as a result of tripping over pipe racker stop in the course of his employment while aboard the ultra-deep-water dual-activity drillship, *DISCOVERER INSPIRATION*. R. Doc. 1.

In conducting discovery, after receiving responses to his written discovery, Plaintiff noticed the deposition of Randy Sivils, deponent and former Transocean employee for June 25, 2020. R. Doc. 57, p. 4. The day before the deposition, on June 24, 2020, Defendants held a teleconference with Sivils to discuss the deposition. *Id.* In that conference, Defendants became aware that some investigative documents were not produced. *Id.* Namely, two Top-Set Level II Investigation Reports ("Top-Set Reports") four pages and twelve pages in length respectively. R. Doc. 45-1, p. 3. Upon discovering that these documents were omitted from their earlier productions, Defendants immediately forward the documents to Plaintiff's on June 24, 2020. R. Doc. 7, p. 4.

Plaintiff contends that the omission was inexcusable, intentional, and prejudicial. R. Doc. 45-1. Plaintiff also contends that Defendants fail to provide any justification for its failure to timely supplement and produce the Top-Set Reports. *Id.* Defendants, in opposition, contend the failure to disclose was inadvertent and nonprejudicial. R. Doc. 57. Defendants also explain that they were unaware of the Top-Set Reports existence until June 24, 2020 when they ultimately produced it to Plaintiffs. *Id.*

The Scheduling Order in this case imposes a discovery deadline of July 13, 2020. R. Doc. 20. On July 17, 2020, after the filing of this instant motion, the District Judge presiding over this case

2

held a scheduling conference and issued an amended scheduling order. The District Judge extended certain deadlines to include the pre-trial conference, now set for October 1, 2020, and the jury trial, now set for October 19, 2020. R. Doc. 60. The Amended Scheduling Order explicit states all other previous deadlines imposed by the original scheduling order are to remain in effect. *Id.*

**II.      Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(a) requires parties to make certain disclosures, including: (1) initial disclosures, (2) disclosure of expert testimony, and (3) pretrial disclosures. Rule 26(e) further requires, in pertinent part, "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response" (a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or (b) "as ordered by the court." A failure to comply with the disclosure requirements of Rule 26 may result in sanctions under Rule 37(c). *In re Oracle Oil, LLC*, No. CV 18-3674, 2019 WL 4209369, at *7 (Morgan, J.) (E.D. La. Sept. 5, 2019).

Rule 37(c) provides for sanctions where a party fails to disclose or supplement an earlier response. Fed. R. Civ. Pro. 37(c). Specifically, Rule 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Rule 37(c)(1) also provides "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses,

including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.*

Rule 37(b)(2)(A)(i)-(vi) provides a list of sanctions that includes (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; or (vi) rendering a default judgment against the disobedient party. Fed. R. Civ. Pro. 37(b)(2)(A)(i)-(vi).

As such, the Fifth Circuit has clarified in deciding whether to grant relief pursuant to Rule 37(c) district courts should consider: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 369 (5th Cir. 2014) (finding no abuse of discretion where opposing counsel included evidence in motion for summary judgment with no justification for its failure to timely disclose or an explanation of its significance) (quoting *Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

The Fifth Circuit has also instructed the courts look to the stage of the litigation in considering harmlessness. *CQ*, 565 F.3d at 280 (finding, "given the advanced stage of the litigation, permitting the new evidence would not have been harmless.") (citing *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) ("Later disclosure of damages

4

would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless.").

### III.   Analysis

Plaintiff contends that the omission of the Top-Set Reports from earlier productions was an intentional failure on the part of the Defendants in responding to his Request for Production No. 1 which sought Defendants "produce each and every accident report." *See* R. Doc. 45-2. Plaintiff also contends that Defendants' failure to not produce the Top-Set Reports until three months after the initial discovery requests were sent and hours before the deposition was not justified, and prejudiced Defendants by giving them an unfair advantage in the deposition. R. Doc. 45-1, p. 8. Plaintiff also contends that he is disadvantaged where the discovery period ended on July 13, 2020 and he no longer has the opportunity to pursue discovery as to the Top-Set Reports. *Id.* Plaintiff ultimately contends because Defendants' tactics were premeditated, intentional and unprofessional, and caused Plaintiff to suffer delay, frustration, prejudice, and financial expense that sanctions are warranted. R. Doc. 45-1, p. 10.

Defendants contend that Plaintiff has suffered no prejudice latent production where the Top-Set Repots are generated from combined investigative information and files that Defendants had already produced. R. Doc. 57, p. 4. Defendants also contend that Plaintiff did not suffer any prejudice in conducting discovery where Sivils' deposition was the first conducted in this matter and Plaintiff had the opportunity to question him, and all other deponents, on the Top-Set Reports. R. Doc. 57, p. 5. As such, Defendant contends that its failure to disclose before June 24, 2020 was harmless. *Id.*

Defendants also aver that any failure to produce was inadvertent and it has produced over 1,900 pages of documents and various investigative reports in good faith. R. Doc. 57, p. 8. Defendant also cites to COVID-19 and the global pandemic, and the complexity it poses to document discovery, as cause for their failure to produce the Top-Set reports earlier. *Id.* Defendants finally aver that Plaintiff's position on an extension of a discovery deadline is hypocritical where Defendant Transocean earlier sought a joint agreement to extend the discovery deadline and Plaintiff refused contending the case was not complex and would not require any overcomplicated discovery. R. Doc. 57, p. 12. As such, Defendants contend Plaintiff's motion is wholly unwarranted and should be denied for those reasons. R. Doc. 57, p. 14.

This Court starts with a basic reading of Rule 37(c)(1). Plaintiff seeks as remedy that the Top-Set Reports be deemed admissible. Rule 37(c)(1) does not provide admissibility as a possible sanction and this Court can find no example of other courts sanctioning litigants in this manner. *See, e.g., Eubanks v. Eubanks*, No. CV 17-1217, 2017 WL 3380476, at *2 (Morgan, J.) (E.D. La. Aug. 4, 2017) ("It is clear from the face of the rule that "Rule 37(c)(1) is intended to prevent the practice of 'sandbagging' an opposing party with new evidence" by failing to produce documents the party wishes to use in his own case"). Plaintiff fails to direct this Court to a case where a court has contorted to relief afforded under Federal Rule of Civil Procedure 37 from exclusion to forced admissibility. Admissibility is to be determined by the gate-keeper of evidence, the district judge presiding over this case. Rule 37(c)(1) deals exclusively with the exclusion of evidence and there is no evidence in text or case law that supports Plaintiff's contention that an inverse sanction is permissible. As such, this Court is of the opinion that deeming the Top-Set reports admissible as a Rule 37 sanction is not an acceptable reading of the rule.

Next, in considering the importance of this evidence, the Court notes, while it appears the Top-Set Reports are important, they also seem to be a conglomeration of information from all the other investigatory documents Plaintiff has already received. *See* R. Doc. 45-3 and 57-2. As Defendants have pointed out, they have already produced the Transocean Incident report,[1] the incident report PowerPoint, the Coast Guard Report of Injury,[2] the factual background of what occurred, the immediate causes, the underlying causes, the root causes, the corrective actions, the incident Quick Share report that was shared following the conclusion of the investigation, and photographs relative to investigation. R. Doc. 57, p. 3. Transocean also provided materials that provided the summary of the incident, supporting materials including risk assessments, joint safety meetings, conclusions, including immediate, underlying and root cause analyses, and corrective actions implemented following the incident. R. Doc. 57, p. 9. Finally, Transocean produced all of the written witness statements taken in the course of the investigation. *Id.*

At the hearing, Plaintiff stated that the Top-Set Reports contained one additional fact—namely that the pipe racker had been stuck in the up position since the time of the rig's construction in 2009.[3] Plaintiff contends this information is important where it shows how long the hazard

---

[1] The information included in the produced investigative materials contained the "Transocean Incident Report" identifying Transocean's responsible authorities on the rig at the time of the incident, the factual background of the incident, the alleged injuries, the witnesses, and the results of the investigation including root cause analyses. R. Doc. 57, p. 9.

[2] The Coast Guard injury report was completed by the Transocean OIM/Master/ R. Doc. 57, p. 9.

[3] According to the Plaintiff and documents supporting this motion, the pipe racker was designed to recess into the ship and lay flush with the floor of the vessel in order to avoid being a tripping hazard. Notwithstanding, the grating was installed around the pipe racker that prevented the pipe racker from recessing into the vessel's floor. Plaintiff also indicated that the pipe racker was never painted with alternating yellow and black stripes, the universal symbol for hazard.

7

existed and, as Transocean commissioned the construction of the vessel, it shows that Transocean authorized the installation of the tripping hazard.

In reviewing the document, the Court notes the one of the Top-Set Reports indicates "[t]he latch has been in place since rig construction. Latch not identified as a trip point during vessel construction/ ship yard phase." R. Doc. 45-3, p. 7. The Court, however, in reviewing the root cause report produced to Plaintiff in a timely manner, also notes that the fact that the latch was in the landing area path was linked to the engineering shipyard design. R. Doc. 57-2, p. 29. While the Court does not believe that the information is one in the same, the Court does believe that the information is sufficiently similar to allow Plaintiff to probe into that topical area. As such, the Court does not find any difference in the documents remarkable. In fact, even the Plaintiff's expert did not find a fact of significance contained within the Top-Set Reports that altered his opinion in this case. *See* Defendants' Supplemental Opposition.

Here, as previously mentioned, Plaintiff is in possession of a vast array of investigatory documents to support his damage claim. *Cf. Innovention Toys, LLC v. MGA Entm't, Inc.*, No. CV 07-6510, 2010 WL 11538622, at *3 (Feldman, J.) (E.D. La. Sept. 14, 2010) (finding document important where opposing party had no other admissible evidence in support of its damages claim). As such, the Court finds that the importance of these documents is minimal in relation to the other investigatory documents produced.

Next, in considering the material prejudice, or lack thereof, the Court should note Plaintiff never filed a motion to compel the production of these documents, these documents are not

8

voluminous, and these documents are not complex.[4] *See CPI Card Grp.-Nevada, Inc. v. Traffic Jam Events, LLC*, No. CIV.A. 11-2873, 2013 WL 55910, at *2 (Vance, J.) (E.D. La. Jan. 3, 2013) (discussing prejudicial nature of withheld documents). In addition, the Plaintiff had time to review the twenty pages of documents before the deposition was taken of Sivils, or any other deponent.

The Plaintiff explained at the hearing that he was prejudiced in not being able to pursue discovery as to which Transocean representative specifically authorized the installation of the pipe racker at the time of construction. Plaintiff even indicated his intention on deposing that person. Plaintiff did not allege any financial expense incurred, beyond the filing of this motion. Plaintiff also concedes he was able to use the Top-Set Reports at every deponent's deposition and only complains at Sivils, the first deposition conducted in this case, he did not receive the document in time to prepare.

Notwithstanding, the Court does not find this a fact of consequence. It does not matter who made the decision authorizing the installation of the grate against the pipe racker or even when that decision was made. What matters is someone from Transocean accepted the vessel, notwithstanding that trip hazard and it remained a trip hazard on the day of the incident. Moreover, the Defendants admitted, at the hearing, that the latch was stuck in the up position since the time of construction. The Court hardly finds a deposition necessary in this situation.

In addition, Plaintiff and his expert were able to make use of these documents. Plaintiffs were given the Top-Set Reports the at 4:30 p.m. the day before the deposition. *See* R. Doc. 45-4. Combined, the reports are sixteen pages in length and many of the pages in the reports are only a

---

[4] The Court, here, notes that despite Defendant's contention Rule 37 is not applicable, "[a] sanction under Rule 37(b)(2) is not contingent on a party's first filing a motion to compel. *Eubanks*, 2017 WL 3380476, at *2.

9

quarter or half page worth of information. The Plaintiff had plenty of time to review, analyze, and utilize the reports are the deposition of every witness in this matter.

As it stands, the only prejudice Plaintiff is specifically able to point to is surprise. Surprise alone does not support sanctioning Defendants. As such, the Court find that Plaintiff, at best, suffered de minimis prejudice as a result of the production omission.

Third, the Court is to consider the availability of a continuance to cure any prejudice. The Court first notes that the scheduling order in this case imposes a discovery deadline of July 13, 2020, which has now lapsed without extension. *See* R. Doc. 20. Next, as this Court already noted, any prejudice suffered on the part of the Plaintiff seems minimal at best. While the documents were prejudiced only nineteen (19) days before the discovery deadline, they were produced in time that Plaintiff would be in possession of them for every deposition to be taken and in time for them to make use in any dispositive or pre-trial motion. *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 386 (Roby, M.J.) (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012) (discussing benefit of opposing party having the report as they proceeded to complete the remaining depositions).

Notwithstanding, the Plaintiff only discovered this fact on June 24, 2020, and the discovery period closed on July 13, 2020, he had no opportunity to send any discovery on the issue of the authorization and installation of the pipe racker and grate. While the Plaintiff indicated he sent out multiple discovery respects on July 2, 2020 and July 6, 2020, the Defendants had no obligation to respond to those requests before the close of discovery and this Court will not compel it. Nevertheless, to cure even the minimal prejudice suffered by Plaintiff, the Court will allow Plaintiff to propound two additional requests for admissions on the limited topics of whether the

pipe racker latch was stuck in a up position on the day of the incident and had it been stuck in that position since the time of the vessel's construction.

It is unclear to the Court what additional discovery is necessary on account of the Top-Set Reports Production. As such, the Court does not find a continuance necessary as any prejudice has already been cured without great implication. *Cf. Matthews*, 2016 WL 1545645, at *3 (finding a continuance could not cure prejudice where it would create an unnecessary and additional delay as other deadlines would need to be extended).

Finally, the Court considers the explanation for the party's failure to disclose. As explained previously, Defendants point to simple inadvertence. Plaintiff, on the other hand, avers the omission was intentional where it knows that Defendants produced the documents to Chevron on February 6, 2019, two weeks after Plaintiff Smith's accident, and over a year before it was produced to Plaintiff. R. Doc. 45-1, p. 6.

In analyzing Defendants' production to Chevron, the Court notes that Randy Sivils was the sender of the email producing the report. It is undisputed whether Sivils had knowledge of the Top-Set Reports existence, as he brought it to the attention of Defendant's counsel on June 24, 2020. While Sivils is an agent of Transocean, the question is whether Defendant Transocean knew or should have known of the document's existence. Here, the Court notes that Graham Park, senior manager for Transocean was carbon copied on Sivils' email.

This case was instituted on December 23, 2019, more than ten months after that Top-Set Report was sent out. "[F]orgetfulness [however] is not a reasonable excuse." *See, e.g., Matthews*, 2016 WL 1545645, at *2 (finding explanation that counsel forgot the expert report deadline unreasonable). In addition, while the Court notes that Defendants' original counsel was withdrawn

11

and current counsel substituted on April 7 and 8, 2020, the Court is of the opinion that with an appropriate amount of diligence that these reports could have been uncovered prior to June 24, 2020.

Notwithstanding, the Court remains reluctant to find the latent production was intentional and tactical on the part of Defendants. As soon as Defendants' counsel became aware of the documents' existence is amended and supplemented Transocean's responses and provided the reports to Plaintiff. Plaintiff neither found out about the reports during the deposition as a result of question nor needed to ask for them to be produced. In fact, Plaintiff did not even know the reports existed prior to Defendants voluntary producing them.[5] *See Yelton*, 279 F.R.D. at 386 (finding harmlessness where the line of cases that suggest a sanction could be available contemplate a complete failure to supplement responses, which was not the case where the report was discovered as result of deposition testimony and ultimately produced).

While the Court does not find Defendant's oversight and lack of diligence acceptable, it neither finds that Defendant's omission was premediated and strategic to cause Plaintiff prejudice. As such, the Court should find that Defendant's explanation indifferent as it neither bodes in favor or against finding sanctions. *Id.* ("The Court therefore finds that the delayed production of Dr. Kim's report, which was voluntarily produced—albeit two years after it was created—does not warrant a finding of sanction.").

---

[5] The Court, here, notes while Plaintiff tried to suggest that he would not have received the documents but for him subpoenaing third-party Chevron, also in possession of the documents. The evidence in this case does not support that conjecture where Defendants emailed the documents to Plaintiff after having a discussion with Sivils regardless of whether Plaintiff would have received the documents from Chevron the next day on his subpoena return.

Taking these four factors together, the late supplemental production of the Top-Set reports does not support sanctioning Defendants. As such, the Court should neither award attorney's fees nor extend the discovery deadline sixty (60) days.

IV. **Conclusion**

**Accordingly,**

**IT IS ORDERED** that Plaintiff's **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (R. Doc. 45) is DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall be permitted to send two additional requests for admissions limited to the topics of whether the pipe racker stop was up on the day of the incident and whether the pipe racker stop has been jammed in the up position since the vessel was constructed in 2009.

New Orleans, Louisiana, this 27th day of July 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**