## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

ORLANDO SMITH                           CIVIL ACTION

VERSUS                                  NO. 19-14738-WBV-KWR

TRANSOCEAN OFFSHORE USA, INC.           SECTION: D (4)

### ORDER AND REASONS

Before the Court is a Consolidated Motion to Strike Supplemental Witness and Exhibit Lists and Motion in Limine, filed by defendants, Transocean RIGP DIN LLC and Triton Asset Leasing GmbH (collectively, "Defendants").[1] Plaintiff opposes the Motion,[2] and Defendants have filed a Reply.[3] Also before the Court is a Contested Motion for Leave to File Complainant's Second Supplemental Witness and Exhibit Lists[4] and a Contested Motion for Leave to File Complainant's Third Supplemental Witness List and to Allow Supplemental Expert Reports,[5] both filed by Plaintiff. Defendants oppose both Motions for Leave.[6]

After careful consideration of the parties' memoranda and the applicable law, Defendants' Motion to Strike is **GRANTED** and Plaintiff's two Motions for Leave are **DENIED.**

---

[1] R. Doc. 114.
[2] R. Doc. 117.
[3] R. Doc. 131.
[4] R. Doc. 118.
[5] R. Doc. 124.
[6] R. Docs. 129, 132.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This is an action to recover damages for personal injuries allegedly sustained by plaintiff, Orlando Smith, while working about a vessel owned and operated by defendant, Transocean Offshore USA, Inc.  Plaintiff alleges that the Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1333 and general maritime law.[7]  On December 23, 2019, Plaintiff filed a Complaint in this Court, alleging that he was injured on January 22, 2019 while employed by Haliburton Energy Services, Inc. on a slickline crew rendering services to Transocean on the rig floor of the DISCOVERER INSPIRATION.[8]  Plaintiff alleges that while he was working aboard the vessel, he "was caused to trip over an unpainted and unmarked pipe racker stop causing serious and disabling injuries to his right shoulder and spine."[9]  Plaintiff further alleges that Transocean's negligence in "failing [to] perform its turnover duty, active control duty and duty to intervene" was a proximate cause of the accident.[10]  Plaintiff claims that he sustained "serious, disabling and permanent injuries to his right shoulder and spine," and seeks several categories of damages, including past and future mental and physical pain and suffering, past and future lost wages, past and future medical expenses and loss of enjoyment of life, for a total sum of $5,000,000.00.[11]

---

[7] R. Doc. 1 at ¶ I.
[8] *Id*. at ¶ IV.
[9] *Id*.
[10] *Id*. at ¶ V.
[11] *Id*. at ¶ VI.

On January 27, 2020, the Court granted Plaintiff's Motion for Leave to File First Amended Complaint.[12]   The First Amended Complaint names Triton Asset Leasing GmbH ("Triton") as an additional defendant in this matter.[13]   Plaintiff alleges in the First Amended Complaint that at all material times, Transocean and Triton (collectively, "Defendants") were both "the owner, owner pro hac vice and operator of the ultra-deepwater dual-activity drillship, **DISCOVERER INSPIRATION**."[14]   Plaintiff further alleges that on January 22, 2019, while working on the rig floor of the DISCOVERER INSPIRATION, he "was caused to trip over an unpainted and unmarked pipe racker parking latch causing serious and disabling injuries to his right shoulder and spine."[15]   Plaintiff claims that a proximate cause of his accident was the negligence of Transocean and Triton "in failing to perform its [sic] turnover duty, active control duty (inadequate pre-existing equipment placement) and duty to intervene."[16]   Plaintiff again alleges that he sustained "serious, disabling and permanent injuries to his right shoulder and spine," and seeks the same categories of damages as in the original Complaint, for a total sum of $5,000,000.00.[17]

On April 9, 2020, the Court issued a Scheduling Order, setting this matter for a jury trial on September 28, 2020 and, pertinent to the instant dispute, setting a June 12, 2020 deadline for the parties to file their witness and exhibit lists.[18]   The

---

[12] *See*, R. Docs. 6, 7, 8, 9, 10, 11.
[13] R. Doc. 11 at ¶ II.
[14] *Id*. at ¶ III.
[15] *Id*. at ¶ IV.
[16] *Id*. at ¶ V.
[17] *Id*. at ¶ VI.
[18] R. Doc. 20 at p. 3.

Court specified in the Scheduling Order that, "The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown." [19]   The Court subsequently granted Plaintiff's unopposed motion to continue the parties' expert report deadlines, which were continued to June 2, 2020 and July 2, 2020, respectively.[20]

On June 8, 2020, Defendants filed a Motion to Continue, seeking a continuance of all of the remaining pretrial deadlines, including the September 28, 2020 jury trial, based upon the significant impact of COVID-19 on Defendants' ability to obtain meaningful discovery.[21]   Defendants also requested expedited consideration of the Motion to Continue, which the Court granted. [22]   Plaintiff opposed the Motion, asserting that a continuance was not warranted because the parties were still able to conduct adequate and thorough discovery during the pandemic.[23]   On July 1, 2020, the Court issued an Order, denying the Motion to Continue without prejudice in part, to the extent Defendants sought a continuance of deadlines that had not yet expired, and denying the Motion to Continue as moot in part, to the extent Defendants sought a continuance of the Final Pretrial Conference and jury trial dates, as those had been continued without date on June 30, 2020 by the Chief Judge's General Order No. 20-9.[24]

---

[19] *Id.*
[20] R. Docs. 22, 23.
[21] R. Doc. 25.
[22] R. Docs. 26, 30.
[23] R. Doc. 37.
[24] R. Doc. 44 (*citing* R. Doc. 42).

While the Motion to Continue was pending, Plaintiff and Defendants each filed their witness and exhibit lists on June 12, 2020, in accordance with the Scheduling Order.[25]  Plaintiff subsequently filed supplemental witness and exhibit lists without leave of Court on July 10, 2020,[26] and Defendants filed supplemental witness and exhibit lists on July 11, 2020.[27]  The discovery deadline in this case was July 13, 2020.[28]

On July 17, 2020, the Court issued an Amended Scheduling Order, containing new dates for the jury trial and Final Pretrial Conference in this matter, and specifying that, "All other deadlines set forth in the court's previous Scheduling Order, R. Doc. 20, remain in effect with the exception of the deadlines contained herein."[29]  Shortly thereafter, on July 27, 2020, the parties filed several pretrial motions, including two motions for summary judgment and three motions *in limine*.[30] On September 25, 2020, the parties participated in a settlement conference with the assigned Magistrate Judge, which was unsuccessful.[31]  On January 7, 2021, the Court issued another Amended Scheduling Order, resetting only the trial and Final Pretrial Conference dates due to the COVID-19 pandemic.[32]  That Order, too, advised that all other deadlines set forth in the Court's previous Scheduling Orders remain in effect.

---

[25] R. Docs. 31, 32, 33, 34.
[26] R. Docs. 51, 52.
[27] R. Docs. 54, 55.
[28] R. Doc. 20 at p. 3.
[29] R. Doc. 60.
[30] R. Docs. 62, 63, 64, 65, 66.
[31] R. Doc. 106.
[32] R. Doc. 110.

On February 18, 2021, Plaintiff filed a Second Supplemental Witness List and a Second Supplemental Exhibit List into the record without seeking leave of Court.[33] The Second Supplemental Witness List names only one additional witness – Dr. Donald Dietze and/or a Representative(s) of Dietze & Logan Spine Specialists, LLC.[34] The Second Supplemental Exhibit List likewise lists only one additional exhibit – "Medical and medical billing records of Dr. Donald Dietze and/or Dietze & Logan Spine Specialists, LLC."[35]

On February 26, 2021, Defendants filed the instant Motion to Strike Supplemental Witness and Exhibit Lists & Motion in Limine ("Motion to Strike"), asking the Court to strike Plaintiff's untimely and prejudicial supplemental witness and exhibit lists filed on February 18, 2021, and to exclude all evidence regarding Plaintiff's alleged spinal injury, which was first raised as an issue in this case in February 2021, including photographs, videos, lay testimony and expert testimony.[36] Defendants also seek fees and costs for filing their Motion to Strike, pursuant to Fed. R. Civ. P. 37.[37] Defendants assert that after the alleged injury, Plaintiff was diagnosed with a Grade III AC joint separation of the right shoulder, and that Plaintiff kept his arm in a sling for almost five months before undergoing successful shoulder surgery in June 2019.[38] Defendants claim that prior to February 2021, Plaintiff has submitted that his damages relate to his shoulder injury and "pain and

---

[33] R. Docs. 112, 113.
[34] R. Doc. 112.
[35] R. Doc. 113.
[36] R. Doc. 114.
[37] R. Doc. 114-1 at p. 1.
[38] *Id*. at p. 2.

ulnar nerve dysfunction in his right elbow," and even filed a dispositive motion on causation for the injuries to his right shoulder and elbow.[39]  Defendants note that their trial position is that the right elbow injury caused by prolonged immobilization of Plaintiff's right arm was a result of Plaintiff's failure to mitigate his damages since he waited several months to undergo shoulder surgery.[40]

Defendants assert that following the close of discovery, after filing pretrial and dispositive motions, and after two successful surgeries to Plaintiff's elbow and shoulder, Plaintiff now seeks to change his theory of causation and damages to include a neck injury that was never previously raised by Plaintiff, his treating physicians, his experts, or any other witness in this matter until February 2021.[41]  Defendants claim that Plaintiff first referenced a neck injury on February 18, 2021, when Plaintiff produced additional medical records and filed, without consent or leave of court, untimely supplemental witness and exhibit lists "in an attempt to ambush the defense at trial."[42]  Defendants assert that the supplemental witness and exhibit lists should be stricken because they were untimely-filed after the June 12, 2020 deadline set forth in the Scheduling Order and leave of Court was neither requested nor obtained prior to filing them into the record.[43]  Defendants point out that they previously sought an extension of certain pretrial deadlines, including the deadline to file witness and exhibit lists, and that Plaintiff "vehemently objected" to

---

[39] *Id*. at pp. 2, 3 (*citing* R. Doc. 64-1; R. Doc. 114-2 at p. 4, Response to Interrogatory No. 6).
[40] R. Doc. 114-1 at p. 3.
[41] *Id*. at pp. 3-4.
[42] *Id*. at p. 4 (*citing* R. Docs. 112, 113).
[43] R. Doc. 114-1 at p. 5.

the requested continuance, which was ultimately denied.[44]  Defendants also note that this Court has previously excluded untimely supplemental discovery and disclosures in other cases so as to not encourage a party's failure to comply with scheduling order deadlines.[45]  Defendants emphasize that Plaintiff filed his supplemental witness and exhibit lists on February 18, 2021, eight months after the Court's June 12, 2020 deadline to do so and seven months after the discovery deadline.  Defendants argue that Plaintiff has clearly failed to comply with the Scheduling Order and has failed to show good cause to allow his untimely filings.  As such, Defendants assert that the supplemental witness and exhibit lists should be stricken from the record, neither Dr. Dietze nor any other witness should be allowed to offer testimony or evidence regarding Plaintiff's neck injury, and any medical records referencing the neck injury, including those of Dr. Dietze, should be excluded from trial.[46]

Defendants further assert that Plaintiff's supplemental witness and exhibit lists and supplemental medical records regarding his neck injury should be excluded under Fed. R. Civ. P. 37 and Fifth Circuit precedent because the untimely disclosure is not substantially justified or harmless.[47]  Defendants claim that in determining whether to exclude evidence under Rule 37 and whether the untimely disclosure is substantially justified or harmless, the Fifth Circuit considers the following factors: (1) the explanation given for the failure to timely move for leave to amend; (2) the

---

[44] *Id*. (*citing* R. Docs. 25, 37, 44).

[45] R. Doc. 114-1 at pp. 5-6 (quoting *Tucker v. United States*, Civ. A. No. 18-4056, 2019 WL 4187745, at *1 (E.D. La. Sept. 4, 2019) (Vitter, J.)) (internal quotation marks omitted).

[46] R. Doc. 114-1 at p. 6.

[47] *Id*. (*citing* Fed. R. Civ. P. 37).

importance of the evidence; (3) the prejudice to the opposing party; and (4) the possibility that a continuance would cure the potential prejudice.[48]  Defendants argue that a prior case from this Court, *Matter of Honey Island Adventure, LLC*, in which this Court struck untimely-filed supplemental exhibit and witness lists under similar circumstances, is directly on point and that the same result should be reached in this case.[49]  As in that case, Defendants argue that all four of the foregoing factors weigh against amending the Scheduling Order in this case to allow Plaintiff's untimely second supplemental witness and exhibit lists.  Regarding the first factor, Defendants assert the fact that the late disclosure and filings resulted from alleged new treatment not previously identified by Plaintiff's treating physician is not sufficient to allow the evidence as to causation or damages, nor is it an excuse for the untimely-filed supplemental witness and exhibit lists in derogation of the Scheduling Order.[50]

As to the second factor, Defendants assert that the additional evidence regarding a neck injury is not relevant because all of the evidence in this case prior to February 2021 concerns Plaintiff's shoulder injury and a nerve/elbow injury.[51]  Regarding the third factor, Defendants assert that the untimely evidence and witness disclosures are clearly prejudicial to Defendants because they present a new theory of causation and damages after the close of discovery and over two years after the

---

[48] R. Doc. 114-1 at pp. 6-7 (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)). The Court notes that this is a mischaracterization of the analysis in *Southwestern Bell Tel. Co.*, wherein the Fifth Circuit applied those four factors to determine whether good cause existed under Fed. R. Civ. P. 16(b) to allow an amended pleading after the scheduling order deadline.  346 F.3d at 546-47.

[49] R. Doc. 114-1 at p. 7 (citing *Matter of Honey Island Adventure, LLC*, Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 (E.D. La. Dec. 22, 2017) (Brown, C.J.)).

[50] R. Doc. 114-1 at p. 8.

[51] *Id.*

alleged accident.[52]  Defendants assert that they have been prejudiced as a result of Plaintiff' failure to identify Dr. Dietze and/or to produce associated records regarding a neck injury because Defendants' IME physician and other proposed experts are not able to evaluate and respond to any opinions regarding Plaintiff's treatment for a neck injury because the expert report and pretrial motion deadlines have passed.[53] Turning to the fourth factor, Defendants contend that while a continuance of the discovery deadline could potentially cure the prejudice, Plaintiff previously objected to continuances of the discovery and trial deadlines, the trial has been continued several times already due to COVID-19 and this case has been trial-ready for several months.[54]  Defendants point out that while a further continuance may cure the potential prejudice, a continuance will require the reopening of discovery and essentially start a completely new case on Plaintiff's causation and damages.  As such, Defendants assert that Plaintiff's supplemental witness and exhibit lists should be stricken and all evidence, reference or argument regarding Plaintiff's neck injury should be excluded from trial.

Plaintiff opposes the Motion to Strike, asserting that his neck injury is directly related to the underlying accident, which resulted in "a number of serious and disabling injuries, which have ultimately proven hard to correctly diagnose."[55] Plaintiff claims that he sustained a "Grade 3+ traumatic separation of his right AC join in his shoulder" as a result of the accident, that he attempted conservative

---

[52] *Id*. at pp. 8-9.
[53] *Id*.
[54] *Id*. at p. 9.
[55] R. Doc. 117 at p. 2.

treatment to no avail, and that his treating orthopedist, Dr. Carey Wilder, performed surgery and reconstruction of his shoulder on June 19, 2019.[56]  Plaintiff asserts that as a result of joint immobility from the surgery, cubital tunnel syndrome developed requiring a cubital tunnel release surgery that was performed by Dr. Rasheed Ahmad on July 27, 2020.[57]  Plaintiff claims that after the cubital tunnel release surgery, he "continued experiencing general neck pain, as well as neurological symptoms with pain radiating from his neck into his hand."[58]

Plaintiff contends that several medical records show that his complaints of cervical pain are related to the underlying accident, including a May 7, 2020 medical narrative from Dr. Winder stating that Plaintiff's diagnosis of cubital tunnel syndrome and the need for surgical intervention were directly related to the accident, which required shoulder surgery and prolonged immobilization.[59]  Plaintiff avers that Dr. Winder and Dr. Ahmad recommended that he undergo a cubital tunnel release surgery, which was delayed due to the workers' compensation carrier's failure to approve the procedure.[60]  Plaintiff points out that both doctors opined that delaying the cubital tunnel release surgery could result in more damage to his ulnar nerve.[61]  After receiving the surgery on July 27, 2020, Plaintiff returned to Dr. Winder on January 21, 2021, who noted that Plaintiff initially reported improvement of

---

[56] *Id.*  The Court notes that Plaintiff erroneously refers to a Dr. Carey Wicker, but the medical records attached to the Opposition brief confirm that his treating orthopedist is Dr. Carey Winder.  *See*, R. Doc. 117-1.

[57] R. Doc. 117 at p. 2.

[58] *Id.* at pp. 2-3.

[59] *Id.* at p. 3 (*quoting* R. Doc. 117-1).

[60] R. Doc. 117 at p. 3.

[61] *Id.* (*citing* R. Docs. 117-1, 117-2).

symptoms to Dr. Ahmad, but subsequently reported neurological symptoms in the palm of his hand.[62]  Plaintiff asserts that he reported neck pain, pain that radiates from his fingers into his neck, as well as some shoulder pain, which led to Dr. Ahmad ordering repeat nerve conduction and EMG studies that revealed possible cervical injury.[63]  Plaintiff emphasizes that Dr. Winder opined during that visit that Plaintiff, "has always had some of this nerve pain from the timeframe probably at least a month or so after his AC joint reconstruction, and it is certainly a possibility that he could have had a cervical injury as well that may account from some of these symptoms."[64]

Plaintiff asserts that he underwent a cervical spine MRI on January 28, 2021, which revealed a disc protrusion at C6-7, causing mild overall spinal stenosis and severe foraminal stenosis.[65]  Plaintiff claims that he had a follow-up appointment with Dr. Winder on February 1, 2021, who confirmed the MRI results and opined that, "This is certainly a problem that also could have been caused by his original work injury or at least exacerbated by his work-related injury and subsequent surgery on his shoulder and the immobilization associated with that as well."[66]  Based on the MRI results, Dr. Winder referred Plaintiff to a spine surgeon.[67]  Plaintiff asserts that he began treating with Dr. Donald Dietze, a neurosurgeon at Dietze & Logan Spine Specialists, on February 11, 2021, who diagnosed Plaintiff with, among

---

[62] R. Doc. 117 at p. 4 (*citing* R. Doc. 117-4).
[63] R. Doc. 117 at p.4 (*citing* R. Doc. 117-4).
[64] R. Doc. 117 at p. 4 (*quoting* R. Doc. 117-4) (internal quotation marks omitted).
[65] R. Doc. 117 at p. 5 (*citing* R. Doc. 117-5).
[66] R. Doc. 117 at p. 5 (*quoting* R. Doc. 117-6) (internal quotation marks omitted).
[67] R. Doc. 117 at p. 5 (*citing* R. Doc. 117-6).

other things, cervical discogenic pain syndrome and cervical radiculopathy at C7.[68]
Dr. Dietze also indicated that Plaintiff was a candidate for a C6-7 anterior cervical
fusion, but elected to follow-up with Plaintiff in the following months with patient
visits and a second cervical MRI to reassess his neck injury, and indicated that
epidural steroid injections were a possible avenue of treatment.[69]  Plaintiff avers that
Dr. Dietze authored a letter concerning his treatment on March 15, 2021, in which
Dr. Dietze opined that, "the C6-7 disc herniation was caused by the work related
injury on January 22, 2019 that was overlooked because of the right shoulder
significant injury."[70]  Plaintiff claims Dr. Dietze set forth several future treatment
options for Plaintiff in the letter, including bilateral C6-7 selective nerve root blocks
and cervical surgery in the form of an anterior C6-7 cervical fusion.[71]

Addressing Defendants' argument that the Court should strike any evidence,
reference or argument regarding his neck injury because he failed to seek leave to file
his supplemental witness and exhibit lists, Plaintiff asserts that he will correct this
defect by filing a motion for leave to file the supplemental lists "today."[72]  Plaintiff
argues that the foregoing medical records concerning his complaints of neck pain
"clearly establish" that "good cause absolutely exists" to allow his supplemental
exhibit and witness lists past the Court-imposed deadline and to allow evidence of his
"previously undiagnosed neck pain."[73]  Plaintiff contends that "multiple doctors,"

---

[68] R. Doc. 117 at p. 5 (*citing* R. Doc. 117-7).  The Court notes that these findings are in Dr. Dietze's treatment note under the heading, "Assessment/Impression."  R. Doc. 117-7 at p. 4.
[69] R. Doc. 117 at pp. 5-6 (*citing* R. Doc. 117-7).
[70] R. Doc. 117 at p. 6 (*quoting* R. Doc. 117-8) (internal quotation marks omitted).
[71] R. Doc. 117 at p. 6.
[72] *Id.*
[73] *Id.* at pp. 6-7.

including Dr. Winder and Dr. Dietze, have indicated that Plaintiff's complaints of neck pain are very likely related to the underlying accident.[74] Plaintiff insists that he has diligently treated with qualified physicians since the accident, and the fact that it has taken several physicians longer than expected to diagnose him with a cervical condition "is unfortunate, but his cervical injury cannot be discredited or discounted as Defendants argue simply because it went specifically undiagnosed for some time, especially in light of the medical records presented herein."[75] Plaintiff maintains that the medical records show that good cause exists to allow evidence and testimony concerning his neck injury. Plaintiff further argues that any prejudice to Defendants in allowing the evidence could potentially be cured by a continuance of the discovery deadline, especially since the trial in this matter has been continued multiple times due to COVID-19 and had not yet been reset as of the date of the Opposition brief.[76] The Court notes that Plaintiff cites no legal authority in its Opposition brief.[77]

On the same day that Plaintiff filed his Opposition brief to Defendants' Motion to Strike, Plaintiff filed a Contested Motion for Leave to File Complainant's Second Supplemental Witness and Exhibit Lists, asserting that good cause exists to allow his untimely-filed supplemental witness and exhibit lists previously filed on February 18, 2021.[78] In the Memorandum in Support, Plaintiff "adopts and incorporates" the

---

[74] *Id.* at p. 7.
[75] *Id.*
[76] *Id.*
[77] *See, generally*, R. Doc. 117.
[78] R. Doc. 118 at p. 1 (*citing* R. Docs. 112, 113).

arguments set forth in his Opposition brief to Defendants' Motion to Strike "that good cause exists to warrant the filing of" his supplemental witness and exhibit lists.[79] Plaintiff offers no further arguments in support of his Motion for Leave.  The Second Supplemental Witness List, attached to Plaintiff's Motion for Leave, is identical to the Second Supplemental Witness List filed without leave on February 18, 2021[80] and lists only one supplemental witness – "Dr. Donald Dietze and/or Representative(s) of Dietze & Logan Spine Specialists, LLC."[81]

Three days later, on March 18, 2021, Plaintiff filed a Contested Motion for Leave to File Complainant's Third Supplemental Witness List and to Allow Supplemental Expert Reports.[82]  Plaintiff seeks to update the expertise of his previously-disclosed vocational rehabilitation expert, Kasey Crawford, to include the qualification of certified future life care planner regarding Plaintiff's cervical condition, and seeks to submit supplemental expert reports from Crawford and Plaintiff's previously-disclosed economist, Dr. Randolph Rice, addressing Plaintiff's cervical condition.[83]  Plaintiff's counsel contemplates that Crawford will need to supply a report addressing future medical costs regarding Plaintiff's cervical condition, and that Dr. Rice will have to supplement his previous report to address the present value of said future cervical medical costs.[84]  Plaintiff asserts that forcing him to go to trial without this evidence "precludes Complainant the opportunity to

---

[79] R. Doc. 118-1 at p. 1 (*citing* R. Docs. 112, 113, 117).
[80] R. Doc. 112.
[81] R. Doc. 118-2.
[82] R. Doc. 124.
[83] *Id*. at p. 1; R. Doc. 124-1 at p. 1.
[84] R. Doc. 124-1 at pp. 1-2.

obtain justice."[85]  In support of the Motion, Plaintiff again "adopts and incorporates" the argument set forth in his Opposition brief to Defendants' Motion to Strike that good cause exists to file a Third Supplemental Witness List past the deadline "to allow for the admission of critical evidence concerning Mr. Smith's previously undiagnosed neck condition as it relates to the accident involved herein."[86]  Plaintiff argues that he has made clear, through direct reference to relevant medical records, that his treating physicians – Dr. Winder and Dr. Dietze – have "clearly indicated that his complaints of neck pain are very likely related to the accident which is the subject of the present suit."[87]  As such, Plaintiff argues that his timely-retained experts should be given the opportunity to address his cervical condition.[88]  The Third Supplemental Witness List submitted with Plaintiff's Motion names only one supplemental witness – "Kasey L. Crawford, MHS, LRC, CRC, CCM, CLCP."[89]

Defendants filed an Opposition brief to Plaintiff's Motion for Leave to File Second Supplemental Witness and Exhibit Lists.[90]  In the interest of judicial economy, Defendants adopted and incorporated the arguments set forth in their Motion to Strike and their proposed Reply brief in support of their Motion to Strike, asserting that good cause does not exist to warrant the filing of Plaintiff's second supplemental witness and exhibit lists.[91]

---

[85] *Id.* at p. 2.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] R. Doc. 124-2.

[90] R. Doc. 129.

[91] *Id.* at p. 1 (*citing* R. Docs. 114 through 114-5; R. Docs. 128 through 128-5).  The Court notes that Defendants' Motion for Leave to File Reply was pending at the time Defendants filed their Opposition brief, but was subsequently granted by the Court.  *See*, R. Docs. 128, 130.

On March 23, 2021, Defendants filed a Reply brief in further support of their Motion to Strike, largely reiterating the arguments made in their Motion. [92] Defendants assert that Plaintiff acknowledged the prejudicial effect of the new evidence in his Opposition brief, but failed to address why or how he and his physicians failed to mention any neck injury or neck pain for more than two years after the underlying injury.[93] Defendants point out that Plaintiff failed to mention any neck injuries or neck pain during his deposition taken over eight months ago.[94] Defendants further argue that Plaintiff's reliance on a 2021 notation from Dr. Winder that the neck pain may be related to the underlying injury is speculative and contradicted by Dr. Winder's contemporaneous medical notes, which do not mention any neck pain or nerve issues prior to February 2021.[95] Defendants note that Dr. Winder did not mention any neck issues during his July 7, 2020 deposition.[96]

Defendants further suggest that after two years of treating his elbow and shoulder, Plaintiff was sent to Dr. Dietze "for the purpose of this litigation and to receive medical treatment for the purpose of changing Plaintiff's damages theory" to circumvent Defendants' trial defenses.[97] Defendants argue that Plaintiff is asking the Court to allow him to start this case over, as Plaintiff has moved to amend a third time to allow his experts to provide supplemental reports and create an entirely different case when this case has been trial-ready for over seven months. [98]

---

[92] R. Doc. 131.
[93] *Id.*
[94] *Id.* at p. 3 (*citing* R. Doc. 114-3).
[95] R. Doc. 131 at p. 3 (*citing* R. Doc. 131-1).
[96] R. Doc. 131 at p. 4 (*citing* R. Doc. 131-3).
[97] R. Doc. 131 at p. 5; *Id.* at n. 13.
[98] *Id.* at pp. 2, 5-6.

Defendants point out that the Court would need to issue a new scheduling order and reopen discovery, as additional written discovery would be needed, Plaintiff and his treating physicians and the experts would need to be re-deposed, Defendants would need to perform another IME regarding Plaintiff's neck injury and hire additional experts on that issue, and Defendants' existing experts would need to produce supplemental expert reports.[99]  Defendants maintain that the second supplemental exhibit and witness lists are clearly untimely and not substantially justified or harmless and, therefore, should be stricken.

That same day, March 23, 2021, Defendants filed an Opposition brief to Plaintiff's Third Supplemental Witness List and to Allow Supplemental Expert Reports, again adopting the arguments raised in support of its Motion to Strike and in its Opposition brief to Plaintiff's Motion for Leave to File Second Supplemental Witness and Exhibit Lists.[100]

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure "authorize[] federal courts to control and expedite the discovery process through a scheduling order."[101]  The Federal Rules of Civil Procedure specifically authorize this Court to sanction a party for failing to comply with its scheduling order by excluding evidence.[102]  "Federal Rule of Civil Procedure 16 allows a court to exclude expert testimony or strike pleadings if a party

---

[99] R. Doc. 131 at pp. 6-7.
[100] R. Doc. 132 (*citing* R. Docs. 114, 129, 131).
[101] *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (*citing* Fed. R. Civ. P. 16).
[102] *In re Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328, 2014 WL 3353232, at *1 (E.D. La. July 9, 2014) (Vance, J.) (*citing* Fed. R. Civ. P. 16(f), 37(b)(2)).

fails to comply with deadlines imposed by a scheduling order.[103]  A district court has broad discretion in determining how to best preserve the integrity and purpose of its scheduling order.[104]

Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent."[105]  According to the Fifth Circuit, "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[106]  In determining whether the movant has met its burden of proving "good cause" under Rule 16(b)(4), this Court must consider four factors: (1) the movant's explanation for failing to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice.[107]  In determining whether to exclude witnesses and exhibits as a sanction for violating a Rule 16 scheduling order, the Fifth Circuit considers the same four factors.[108]  That determination is within the Court's wide discretion.[109]

---

[103] *Matter of Honey Island Adventure, LLC*, Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871, at *2 (E.D. La. Dec. 22, 2017) (*citing* Fed. R. Civ. P. 16(f)(1); Fed. R. Civ. P. 37(b)(2)(A)).

[104] *Huffman v. Turner Indus. Grp., LLC*, Civ. A. No. 12-1061, 2013 WL 2285124, at *5 (E.D. La. May 22, 2013) (Brown, J.) (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003)).

[105] Fed. R. Civ. P. 16(b)(4).

[106] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (*quoting* 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

[107] *Cartier v. Egana of Switzerland (America Corp.)*, Civ. A. No. 3:08-CV-0001-D, 2009 WL 614820, at *3 (N.D. Tex. Mar. 11, 2009) (citing *S&W Enterprises, L.L.C.*, 315 F.3d at 536).

[108] *Williams v. American Strategic Ins. Corp.*, Civ. A. No. 13-5411, 2014 WL 1246846, at *1 (E.D. La. Mar. 25, 2014) (Africk, J.) (citing *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010)).

[109] *Williams*, Civ. A. No. 13-5411, 2014 WL 1246846, at *1 (citing *Bennett v. GEO Grp., Inc.*, Case No. 12-60017, 2013 WL 5916765, at *4 (5th Cir. May 22, 2013)).

## III.   ANALYSIS

### A. Plaintiff has not shown that good cause exists to modify the Scheduling Order under Fed. R. Civ. P. 16(b) as to the witness and exhibit list deadline or the expert report deadline.

Here, Plaintiff filed a Second Supplemental Witness List and a Second Supplemental Exhibit List on February 18, 2021,[110] eight months after the June 12, 2020 deadline set forth in the Court's Scheduling Order,[111] without leave of Court and without providing good cause at the time of the filings for the delay.  It was only after Defendants moved to strike the filings that Plaintiff filed a Motion for Leave to File Second Supplemental Witness and Exhibit Lists, attempting to show good cause for his failure to comply with the deadlines set forth in the Court's Scheduling Order.[112] Plaintiff has further moved for leave to file a third supplemental witness list and to file supplemental expert reports based regarding his alleged neck injury.[113]  The Court notes that the trial in this matter has been continued four times due to the closure of the United States District Court for the Eastern District of Louisiana Court building due to the COVID-19 pandemic, discovery has been closed for months, and that the trial is currently set for September 13, 2021.[114]

In the Motion to Strike, Defendants assert that all four factors of Fed. R. Civ. P. 16(b)'s good cause analysis weigh against finding good cause exists to amend the Scheduling Order to allow Plaintiff's untimely supplemental witness and exhibit lists.

---

[110] R. Docs. 112, 113.
[111] R. Doc. 20 at p. 3.
[112] R. Doc. 118.
[113] R. Doc. 124.
[114] *See*, R. Docs. 42, 60, 101, 103, 107, 110, 111, 138.

In his Opposition brief, Plaintiff addresses only one of the four factors of the good cause analysis – the availability of a continuance to cure any potential prejudice – and makes no mention of Rule 16.  In fact, Plaintiff fails to cite any legal authority at all in his Opposition brief or in his two Motions for Leave.[115]  Instead, Plaintiff asserts that the medical records of his treating physicians, Dr. Winder and Dr. Ahmad, and those of Dr. Dietze "clearly establish" that "good cause absolutely exists to allow the supplementation" of his witness and exhibit lists past the Scheduling Order deadline "to allow for the admission of critical evidence concerning Mr. Smith's previously undiagnosed neck pain."[116]  The Court has reviewed the medical records submitted by the parties, and finds Plaintiff's conclusory assertion unpersuasive.[117]

Turning to the good cause analysis under Rule 16(b), the Court finds the decision from another Section of this Court in *Matter of Honey Island Adventure, LLC* persuasive.[118]  There, the plaintiffs filed a supplemental witness and exhibit list a month after the deadline set forth in the court's scheduling order without seeking leave of court.[119]  A week later, the defendants filed a motion to strike the supplemental witness and exhibit lists, which prompted plaintiffs to simultaneously file a response to the motion and a second supplemental witness and exhibit list.[120] At that point, the defendants filed a motion to strike the second supplemental witness

---

[115] *See*, R. Docs. 117, 118, 124.

[116] R. Doc. 117 at pp. 6-7.

[117] *See*, R. Docs. 117-1, 117-2, 117-3, 131-1.

[118] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 (E.D. La. Dec. 22, 2017).

[119] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 at *1.

[120] *Id*.

and exhibit list, which plaintiffs opposed.[121]  The plaintiffs asserted that one of the plaintiff's, unbeknownst to their counsel, sought further treatment after the deadline for filing witness and exhibit lists, and that plaintiffs' counsel filed the supplemental witness and exhibit list immediately upon learning of the additional treatment, and served defense counsel with a copy of the medical records within hours after receiving them.[122]  This Court concluded that a majority of the Rule 16(b) good cause factors weighed against modifying the scheduling order with respect to the witness and exhibit list deadline.  Specifically, the Court found the plaintiffs' explanation for the late filing was unpersuasive, the plaintiffs had failed to show the importance of the additional evidence, the defendants would be greatly prejudiced by the additional evidence, and the plaintiffs had failed to timely prepare their case despite a prior continuance granted by the Court.[123]  As such, the Court concluded that good cause did not exist to modify the scheduling order to allow plaintiffs to introduce the recently identified witnesses and exhibits, and the Court granted the defendants' two motions to strike the supplemental witness and exhibit lists.[124]

The Court reaches the same result in this case.  Despite having three opportunities to demonstrate to the Court that good cause exists under Rule 16(b) to allow him to file supplemental witness and exhibit lists after the deadline set forth in the Court's Scheduling Order – in his Opposition brief and two subsequently-filed Motions for Leave –Plaintiff has failed to show that good cause exists to modify the

---

[121] *Id.*
[122] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 at *2.
[123] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 at *3.
[124] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 at *4.

Scheduling Order.  Regarding the first factor, the explanation for Plaintiff's failure to comply with the witness and exhibit list deadline and the expert report deadline, Plaintiff asserts only that the late filings resulted from the fact that he did not experience neck pain until January 2021 and, therefore, was not treated for such pain until February 2021, months after the June 12, 2020 witness and exhibit list deadline.  Plaintiff, however, never sought a continuance of the Scheduling Order deadlines.  Instead, Plaintiff filed a second supplemental witness list and a second supplemental exhibit list into the record on February 18, 2021 without the Court's permission, which prompted Defendants to file the instant Motion to Strike.  It was only then that Plaintiff moved for leave of Court to file his second supplemental witness and exhibit lists, to file a third supplemental witness list and to file supplemental expert reports.

The Court notes that Plaintiff has known about the witness and exhibit list deadline since the April 9, 2020 Scheduling Conference, which was attended by two of Plaintiff's counsel of record.[125]  Plaintiff has also known of his June 2, 2020 expert report deadline since May 11, 2020, when the Court granted *his* motion to continue the expert report deadlines.[126]  Although Plaintiff claims that his neck injury went undiagnosed until February 2021, after those deadlines had passed, Plaintiff offers no explanation for his failure to seek an extension of the deadlines, even after Defendants raised the issue in their Motion to Strike.  More importantly, however, Plaintiff has not offered any explanation for why he failed to bring this new injury to

---

[125] R. Doc. 20.
[126] R. Docs. 22, 23.

the Court's attention when he first became aware of it in February 2021, beyond merely filing supplemental witness and exhibit lists into the record without leave of Court. As such, the Court finds the first factor weighs against finding good cause exists to amend the Scheduling Order with respect to the witness and exhibit list deadline and the expert report deadlines.

Turning to the second factor of the good cause analysis, the importance of the requested relief, the Court finds that, like in *Matter of Honey Island Adventure, LLC*, while the additional evidence and testimony regarding Plaintiff's neck pain could help Plaintiff recover additional damages, Plaintiff has not made clear how great these additional damages may be.[127] Although Plaintiff describes the additional evidence as "critical" in his Opposition brief,[128] he does not argue that it is central to his case.[129] The Court notes that prior to February 2021, Plaintiff alleged, through his Complaint, written discovery, and in his deposition, that the underlying accident only resulted in an injury to his right shoulder and his right elbow.[130] Nonetheless, to the extent that the additional evidence is important, "the importance of the evidence cannot 'singularly override the enforcement of local rules and scheduling orders.'"[131] As such, the Court finds this factor weighs slightly in favor of finding good cause exists to modify the Scheduling Order.

---

[127] Civ. A. No. 16-6940 c/w 16-10728 c/w 17-2652 c/w 17-2896, 2017 WL 6559871 at *3.

[128] R. Doc. 117 at pp. 6-7, 8.

[129] *See, Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016) (Barbier, J.).

[130] *See,* R. Docs. 1, 11, 64, 64-1.

[131] *Perez*, 137 F. Supp. 3d at 347 (quoting *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996)); *See, Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)) (same).

The Court further finds that the third factor, the potential prejudice in granting the relief sought, weighs heavily against Plaintiff because Defendants would be severely prejudiced by the additional testimony and exhibits concerning Plaintiff's alleged neck injury. The Court finds this factor significant. As Defendants point out, and Plaintiff does not dispute, prior to February 2021, Plaintiff's alleged injuries from the underlying accident included only a right shoulder and right elbow injury. Thus, all of the discovery and pretrial motion practice up to this point has focused exclusively upon these two injuries.[132] In fact, Plaintiff filed a Motion for Summary Judgment on the Issue of Medical Causation on July 27, 2020, arguing that no genuine issues of material fact exist surrounding the medical causation opinions of his treating physicians that his right shoulder injury and elbow nerve damage resulted from the January 2019 accident.[133] As Defendants correctly point out, the discovery deadline in this case was July 13, 2020,[134] seven months before Plaintiff filed his supplemental witness and exhibit lists concerning his alleged neck injury. Thus, allowing Plaintiff to introduce additional witnesses and exhibits regarding his neck injury would significantly prejudice Defendants, who have not had an opportunity to conduct any discovery regarding Plaintiff's alleged neck injury.[135] Accordingly, the third factor weighs against finding good cause exists to amend the Scheduling Order.

---

[132] *See*, R. Doc. 114-2 at p.4; R. Doc. 114-3; R. Doc. 117-1; R. Doc. 131-1; R. Doc. 131-2; R. Doc. 131-3.
[133] R. Doc. 64.
[134] R. Doc. 20 at p. 3.
[135] *See*, *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536-37 (5th Cir. 2003) (finding that the third factor weighed against the movant because plaintiff would assert a different cause of action in the amended pleading, and the defendant would be required to conduct additional discovery).

Turning to the fourth and final factor, the availability of a continuance to cure such prejudice, the Court finds this factor also weighs against Plaintiff. This matter is set for a jury trial on September 13, 2020, which is quickly approaching. The Court finds that a continuance will not cure the prejudice to Defendants because they will be forced to conduct additional discovery to address a new theory of causation and damages raised two years after the underlying accident. Thus, the Court agrees with Defendants that a continuance, while it may cure prejudice, will require the reopening of significant discovery in a case that has been trial-ready for months, as additional written discovery will be needed, all of the witnesses will have to be re-deposed, and the parties' experts will need to provide supplemental expert reports. Not only will a continuance further delay the trial in this matter, which has already been continued several times, but Defendants will be forced to incur significant costs in conducting additional discovery, including a second IME of Plaintiff.

It is not lost on the Court that Plaintiff previously opposed Defendants' request for a continuance of all of the pretrial deadlines in June 2020, asserting that, "Mr. Smith will absolutely be prejudiced for a number of reasons by a continuance of the deadlines and/or trial date herein."[136] In opposing the prior motion, Plaintiff insisted that a continuance was not warranted because "this case involves a straightforward set of facts that requires simple and uncomplicated discovery," and that both parties had ample resources and time to conduct adequate discovery and to prepare the case for trial by the end of September.[137] In contrast, Plaintiff now asserts in his

---

[136] R. Doc. 37 at p. 5.
[137] *Id.* at pp. 2, 5.

Opposition brief that a continuance of the discovery deadlines in this case would not prejudice Defendants.[138]   The Court notes that Plaintiff now appears open to a continuance of the pretrial deadlines because he stands to benefit from a continuance. The Court also agrees with Defendants that granting a continuance would encourage similar tactics in the future and would condone Plaintiff's failure to comply with the Scheduling Order deadlines, "which is behavior this Court is not eager to encourage."[139]   For the foregoing reasons, the Court finds that the fourth factor weighs against finding good cause exists to modify the Scheduling Order.

After conducting the four-factor analysis set forth in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,[140] the Court concludes that Plaintiff has failed to show that good cause exists to modify the Scheduling Order with respect to the June 12, 2020 witness and exhibit list deadline and his June 2, 2020 deadline to provide expert reports.[141]   Although Plaintiff did not complain of, or seek treatment for, neck pain until January 2021, which explains why Plaintiff failed to meet the foregoing deadlines, Plaintiff has failed to offer any explanation for his failure to seek a continuance of those deadlines once he became aware of a potential neck injury. While the additional evidence may increase Plaintiff's damages, Plaintiff offers no information regarding the extent of those additional damages.   Additionally, Defendants will be significantly prejudiced by the additional testimony and evidence

---

[138] R. Doc. 117 at p. 7.

[139] *Red Dot Bldgs. v. Jacobs Technology, Inc.*, Civ. A. No. 11-1142, 2012 WL 2061904, at *4 (E.D. La. June 7, 2012) (Barbier, J.) (citing *Phillips v. Gen. Motors Corp.*, Civ. A. No. 99-3423, 2000 WL 1285380, at *5 (E.D. La. Sept. 12, 2000)).

[140] 315 F.3d 533, 536 (5th Cir. 2003).

[141] *See*, R. Docs. 20, 23.

regarding an injury not asserted until two years after the underlying accident, and a continuance will not cure that prejudice, as it will require the reopening of discovery on a new theory of damages and causation.  While not taken into account in the analysis, the Court further notes that it, too, would be inconvenienced by amending the Scheduling Order at this late date.  The Court, therefore, finds that the balance of the competing interests and equities in this particular case weigh against modifying the Scheduling Order with respect to the witness and exhibit list deadline and Plaintiff's expert report deadline.  As such, Defendants' Motion to Strike is granted and Plaintiff's Motions for Leave are denied.

To the extent Defendants seek "fees and costs for having to move to strike the untimely, deficient supplemental disclosures and filings," pursuant to Fed. R. Civ. P. 37(b)(2)(C) or 37(c)(1)(C),[142] that request is denied.[143]

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Consolidated Motion to Strike Supplemental Witness and Exhibit Lists and Motion in Limine,[144] filed by defendants, Transocean RIGP DIN LLC and Triton Asset Leasing GmbH is **GRANTED**, and Plaintiff's Second Supplemental Witness List [145] and Second Supplemental Exhibit List [146] are hereby **STRICKEN** from the record.  **IT IS FURTHER ORDERED** that Plaintiff shall be precluded from introducing any

---

[142] R. Doc. 114-1 at pp. 1, 10.
[143] *See, Perez v. City of New Orleans,* 173 F. Supp. 3d, 337, 348 (E.D. La. 2016) (declining to sanction plaintiff or award attorney's fees and costs to defendants after granting defendants' motion to strike exhibit list).
[144] R. Doc. 114.
[145] R. Doc. 112.
[146] R. Doc. 113.

evidence at trial regarding his alleged neck injury, which was first raised in February 2021.

**IT IS FURTHER ORDERED** that Plaintiff's Contested Motion for Leave to File Complainant's Second Supplemental Witness and Exhibit Lists[147] and Plaintiff's Contested Motion for Leave to File Complainant's Third Supplemental Witness List and to Allow Supplemental Expert Reports[148] are **DENIED.**

New Orleans, Louisiana, April 19, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[147] R. Doc. 118.
[148] R. Doc. 124.