## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORLANDO SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14738-WBV-KWR** |
| **TRANSOCEAN OFFSHORE USA, INC.** | **SECTION: D (4)** |

### ORDER AND REASONS

Before the Court is Complainant's Motion in Limine to Exclude Testimony of Defendants' Liability Expert, Mike Jacobs.[1]  Defendants oppose the Motion.[2]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

### I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

This is an action to recover damages for personal injuries allegedly sustained by plaintiff, Orlando Smith, on January 22, 2019 while working aboard a vessel owned and operated by defendants, Transocean RIGP DIN LLC and Triton Asset Leasing GmbH (collectively, "Defendants").[4]  Plaintiff alleges that while employed by Haliburton Energy Services, Inc. in a slickline crew that was rendering services to Defendants on the rig floor of the DISCOVERER INSPIRATION, he "was caused to

---

[1] R. Doc. 62.

[2] R. Doc. 70.

[3] In the interest of judicial economy, and because the factual background of this case was extensively detailed in the Court's April 19, 2021 Order and Reasons (R. Doc. 139) the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion

[4] R. Docs. 1 & 11.

trip over an unpainted and unmarked pipe racker stop causing serious and disabling injuries to his right shoulder and spine."[5]

Plaintiff filed the instant Motion on July 27, 2020, seeking to exclude the testimony of Defendants' liability expert, Captain Mike Jacobs, under Fed. R. Evid. 702 on the basis that his testimony is unreliable and not based upon sufficient facts.[6] Plaintiff asserts that Capt. Jacobs rendered a "flawed and improper opinion that Mr. Smith is at fault herein for his failure to exercise Stop Work Authority at the time of his January 22, 2019 accident."[7]   Plaintiff contends that this opinion is flawed because Plaintiff testified that he was completely unaware of the latch over which he tripped at the time of the accident.   Plaintiff claims he was unaware of the latch because it was not painted and it blended into the deck of the vessel.[8]   Plaintiff emphasizes that several other witnesses have provided deposition testimony that the latch involved in his accident was not painted at the time of the accident and that the crew failed to "engineer out" the potential hazard of the latch before the accident.[9] Plaintiff asserts that Defendants' "untimely attempt" to argue that he was at fault is "completely contradictory and unsuccessful" because "it is clear that none of Defendants' employees ever took the time to properly treat the pipe rack stopper latch as a real and viable tripping hazard."[10]

---

[5] R. Doc. 1 at ¶ IV; R. Doc. 11 at ¶ IV.
[6] R. Doc. 62.
[7] R. Doc. 62-1 at p. 5.
[8] *Id.*
[9] *Id.* at pp. 2-4 (*citing* R. Docs. 62-3 through 62-6).
[10] R. Doc. 62-1 at p. 6.

Defendants assert that the Motion should be denied as baseless because it contains no analysis under Fed. R. Evid. 702 regarding why Capt. Jacobs' testimony should be excluded.[11]  Defendants contend that Plaintiff does not question Capt. Jacobs' qualifications or argue that his opinions are irrelevant, and instead focuses on the reliability of his testimony and opinions.  Defendants assert that a proper reliability analysis of an expert's testimony must focus on the principles and methodology used by the expert to reach the opinions and conclusions offered, not the conclusions themselves.[12]  Defendants contend that Plaintiff's Motion does not actually attack the reliability of the methodology used by Capt. Jacobs to arrive at his opinions, but attempts to question the content and support for his conclusions.[13] Defendants assert that Plaintiff will have an opportunity to explore these issues at trial through cross-examination, noting that questions regarding the bases and sources of an expert's opinion affect the weight of the evidence, rather than its admissibility.[14]

Defendants further assert that Capt. Jacobs employed a valid methodology and applied sound reasoning to support his opinions, pointing out that he reviewed the pertinent pleadings, all discovery responses and documents produced during discovery, including photographs of the accident scene, investigative reports from Defendants, Haliburton, and the Coast Guard, as well as Plaintiff's safety expert's

---

[11] R. Doc. 70 at p. 1.
[12] *Id.* at pp. 3-4 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)); *Padgett v. Fieldwood Energy, LLC*, Civ. A. No. 6:18-CV-00632, 2020 WL 1492836 (W.D. La. Mar. 26, 2020) (Doughty, J.)).
[13] R. Doc. 70 at pp. 3, 4, 5.
[14] *Id.* at p. 5.

report.   Capt. Jacobs also conducted interviews with members of the crew and attended depositions of key witnesses via Zoom videoconferencing.[15]   Defendants claim that after reviewing these materials, Capt. Jacobs applied his knowledge of the applicable regulations and standards and used his experience as a licensed Maritime Master and Independent Marine Consultant regarding safety issues in the offshore oil and gas industry to the facts of the case, and reached certain conclusions regarding how the accident occurred, who was at fault, and suggested concrete ways that the risk could have been mitigated.[16]   Defendants argue that this Court has repeatedly recognized that this methodology is reliable.[17]   As such, Defendants assert that Plaintiff's Motion should be denied.

## II.   LEGAL STANDARD

When expert testimony is challenged, the party seeking to present the testimony has the burden of proving by a preponderance of the evidence that the testimony satisfies Federal Rule of Evidence 702.[18]   Rule 702 governs the admissibility of expert testimony and provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) The testimony is based on sufficient facts or data;

---

[15] *Id*. at p. 4.

[16] *Id*.

[17] *Id*. at pp. 4-5 (*citing Padgett*, Civ. A. No. 6:18-CV-00632, 2020 WL 1492836; *Compton v. Moncla Companies, LLC*, Civ. A. No. 17-2258, 2020 WL 1638287 (E.D. La. April 2, 2020) (Ashe, J.); *Breazeale v. Parking Drilling Company*, Civ. A. No. 14-2614, 2016 WL 3365336 (E.D. La. June 17, 2016) (Barbier, J.); *Arnaud v. Island Operating Co. Inc.*, Civ. A. No. 09-2368, 2010 WL 936452 (E.D. La. Mar. 11, 2010) (Lemmon, J.)).

[18] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

      (c) The testimony is the product of reliable principles and methods; and

      (d) The expert has reliably applied the principles and methods to the facts of the case.[19]

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as gatekeepers when determining the admissibility of expert testimony.[20] "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[21] According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[22] The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[23]

      The Supreme Court in *Daubert* set forth the following non-exclusive list of factors to consider in determining the reliability of expert testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community.[24] Whether some or all of these factors apply in a particular case depends on the facts, the expert's

---

[19] Fed. R. Evid. 702.

[20] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

[21] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).

[22] *Ebron*, 683 F.3d at 139 (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).

[23] *Daubert*, 509 U.S. at 590, 113 S.Ct. at 2795.

[24] *In re: Vioxx*, 401 F. Supp. 2d at 573 (citing *Daubert*, 509 U.S. at 593-95, 113 S.Ct. 2768).

particular expertise, and the subject of his testimony.[25]  The Fifth Circuit has held that a trial court may consider additional factors in assessing the scientific reliability of expert testimony, including: (1) whether the expert's opinion is based on incomplete or inaccurate data; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and (3) whether the expert has adequately accounted for alternative explanations.[26]  "The overarching goal 'is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"[27]  A district court has considerable discretion to admit or exclude expert testimony under Rule 702.[28]

## III.  ANALYSIS

At the outset, the Court notes that Plaintiff does not challenge Capt. Jacobs' general qualifications as an expert or the relevance of his opinions.  Thus, the only issue before the Court is whether his opinions should be excluded as unreliable.  The Court agrees with Defendants that Plaintiff has made no showing whatsoever that Capt. Jacobs' opinions are unreliable.  Instead, Plaintiff merely challenges Capt. Jacobs' conclusion that Plaintiff is solely responsible for his accident and asserts that

---

[25] *In re: Vioxx*, 401 F. Supp. 2d at 573 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 13, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

[26] *Nola Ventures, LLC v. Upshaw Insurance Agency, Inc.*, Civ. A. No. 12-1026, 2014 WL 12721798, at *6 (E.D. La. Oct. 31, 2014) (Brown, J.) (citing *Black v. Food Lion Inc.*, 171 F.3d 308, 313 (5th Cir. 1999); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998); *In re Vioxx*, 401 F. Supp 2d at 573).

[27] *Nola Ventures, LLC*, Civ. A. No. 12-1026, 2014 WL 12721798, at *6 (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176).

[28] *See, Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000)).

this conclusion contradicts the deposition testimony of other witnesses in this case. To the extent Plaintiff questions the content of and support for the opinions or reasoning set out in Capt. Jacobs' report, Plaintiff will have an opportunity to explore these issues a trial through cross-examination of Capt. Jacobs and the presentation of countervailing testimony.  Moreover, "questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration."[29]

Nonetheless, the Court has reviewed Capt. Jacobs' expert report, which includes a list of materials reviewed in rendering his opinions, and finds that it is reliable under Rule 702.  According to the report, Capt. Jacobs reviewed several pleadings in this case, including the Complaint and the First Amended Complaint, as well as discovery responses from both parties, photographs and videos of the accident scene provided by Defendants, over 2,000 documents provided by Defendants, and Plaintiff's expert report dated June 2, 2020.[30]  Capt. Jacobs also attended several depositions via Zoom videoconference, including Plaintiff's deposition, participated in telephone interviews with other members of the crew working aboard the vessel at the time of Plaintiff's accident, and reviewed applicable federal regulations and recommended safety practices promulgated by industry associations. [31]  Capt. Jacobs also reviewed Defendants' and Haliburton's safety

---

[29] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty.*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis in original; internal quotation marks omitted).
[30] R. Doc. 70-1 at pp. 2-3.
[31] *Id*. at pp. 3-4, 7-9, 14-17.

policies and manuals, including Haliburton's policy regarding Job Safety Analyses ("JSA's"),[32] and records indicating that Plaintiff participated in a JSA on January 22, 2019, prior to the alleged incident.[33]  Capt. Jacobs opined that, based upon his review of the foregoing materials and his training and over 50 years' experience as a Marine Surveyor and Merchant Mariner, Plaintiff was solely responsible for the alleged incident and failed to follow established safety recommendations and procedures.[34]

The Court finds that Defendants have demonstrated that the reasoning and methodology underlying Capt. Jacobs' opinion is a valid and reliable means for addressing the potential causes of Plaintiff's fall.  "The *Daubert* test is flexible and takes into consideration that an expert may be qualified by experience to testify on matters within his expertise."[35]  Here, Capt. Jacobs' opinions are based on extensive experience as a Marine Surveyor and Merchant Mariner with a focus on offshore activities/practices in the Gulf of Mexico.[36]  The Court finds that Capt. Jacobs' knowledge of and application of the federal regulations and industry standards to the safety policies and procedures of Defendants and Haliburton is sufficient to withstand a Rule 702 challenge.  As such, Plaintiff's Motion to exclude the expert testimony of Capt. Jacobs is denied.

---

[32] *Id*. at pp. 9-14, 17-27.
[33] *Id*. at pp. 12, 28.
[34] *Id*. at pp. 1, 29.
[35] *Padgett v. Fieldwood Energy, LLC*, Civ. A. No. 6:18-CV-00632, 2020 WL 1492836, at *3 (W.D. La. Mar. 26, 2020).
[36] R. Doc. 70-1 at p. 29.

IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Complainant's

Motion in Limine to Exclude Testimony of Defendants' Liability Expert, Mike

Jacobs[37] is **DENIED.**

New Orleans, Louisiana, August 18, 2021.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[37] R. Doc. 62.