UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORLANDO SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14738-WBV-KWR** |
| **TRANSOCEAN OFFSHORE USA, INC.** | **SECTION: D (4)** |

## ORDER and REASONS

Before the Court is a Motion for Summary Judgment on Issue of Medical Causation, filed by plaintiff, Orlando Smith.[1] Plaintiff asserts that there are no genuine issues of material fact regarding the medical causation opinions of his treating physicians that his "severe right shoulder injury and elbow nerve damage" resulted from his January 22, 2019 accident at the heart of this litigation. Plaintiff claims that his treating orthopedic surgeons, Dr. Carey Winder and Dr. Brett Casey, both testified that he suffered a Grade III AC joint separation as a result of the underlying accident,[2] and Dr. Rasheed Ahmad, who treated Plaintiff for nerve pain in his right elbow, testified that Plaintiff's ulnar nerve condition is secondarily related to his shoulder injury.[3] Plaintiff also claims that he was examined by two other physicians on behalf of defendants, Dr. Michael McNulty and Dr. Thad Broussard, who "furnished reports espousing opinions in agreement" with his treating physicians.[4] Plaintiff did not provide the Court with copies of these reports.

---

[1] R. Doc. 64.
[2] R. Doc. 64-1 at pp. 2-3 (*citing* R. Doc. 64-2 at p. 5); R. Doc. 64-1 at p. 3 (*citing* R. Doc. 64-3 at pp. 9-10).
[3] R. Doc. 64-1 at p. 4 (*citing* R. Doc. 64-4 at pp. 6, 8).
[4] R. Doc. 64-1 at pp. 5-6.

Transocean RIGP DIN LLC and Triton Asset Leasing GmbH, Inc. (collectively, "Transocean") oppose the Motion, asserting that there are genuine disputes of material fact regarding the cause of Plaintiff's alleged injuries, and that the issue of medical causation is more properly determined by the trier of fact.[5] Transocean contends that Dr. Casey, who treated Plaintiff the day after the accident, told Plaintiff that he needed immediate surgery for his shoulder injury, but Plaintiff chose instead to be treated by Dr. Winder in Baton Rouge, who did not recommend surgery until four months after the accident.[6] After noting conflicting testimony regarding when Plaintiff began experiencing problems associated with right elbow nerve damage,[7] Transocean points out that Dr. Rasheed Ahmed, who examined Plaintiff post-surgery, testified that Plaintiff's elbow nerve damage is not an injury typically associated with shoulder injuries and was likely caused by sustained immobility in a sling.[8] Dr. Casey similarly testified that excessive immobility could cause nerve problems.[9] Transocean argues that while Plaintiff's initial shoulder injury was caused by the accident, medical testimony shows that all subsequent shoulder complications are the result of a separate, independent, and intervening act not attributed to the accident – Plaintiff's failure to undergo immediate surgery.[10] Transocean also argues that Plaintiff's elbow nerve damage cannot be attributed to the underlying accident because the evidence shows that he would not have suffered

---

[5] R. Doc. 72 at p. 1.
[6] *Id.* at pp. 2-3 (*citing* R. Doc. 72-1 at pp. 4-; R. Doc. 72-2 at pp. 4-5, 6; R. Doc. 72-3 at p. 4)
[7] R. Doc. 72 at pp. 3-4 (*citing* R. Doc. 72-2 at p. 7; R. Doc. 64-4 at p. 9; R. Doc. 72-4 at p. 3).
[8] R. Doc. 72 at p. 4 (*citing* R. Doc. 64-4 at p. 10; R. Doc. 72-4 at pp. 5-6, 7-8
[9] R. Doc. 72 at p. 5 (*citing* R. Doc. 72-1 at p.8).
[10] R. Doc. 72 at p. 9; *See*, R. Doc. 72 at pp. 5 & 8 (same).

from the injury if his arm and shoulder had not been immobilized for such a long time before and after his shoulder surgery. Transocean further argues that Plaintiff has not cited any legal authority to support granting summary judgment on the issue of medical causation, and claims that courts are hesitant, if not completely opposed, to granting summary judgment regarding medical causation.[11]

In response, Plaintiff argues that Transocean "utterly fail[s]" to offer any sufficient evidence to overcome summary judgment, and further that Transocean "only offer[s] conjecture, speculation and argument" regarding the cause of his elbow nerve damage.[12] Plaintiff emphasizes that he followed Dr. Winder's medical advice regarding his shoulder surgery, and that this compliance "was not improper in any way."[13] Accordingly, Plaintiff maintains that he is entitled to summary judgment on the issue of medical causation.

After careful consideration of the parties' memoranda and the applicable law, the Court finds that the summary judgment evidence before the Court demonstrates that there are genuine issues of material fact in dispute regarding the cause of Plaintiff's "severe right shoulder injury and elbow nerve damage."[14] While Dr. Casey and Dr. Winder both testified that Plaintiff suffered a Grade III AC separation in his right shoulder as a result of the January 22, 2019 accident,[15] the deposition testimony before the Court clearly shows that there is a dispute regarding whether Plaintiff's

---

[11] R. Doc. 72 at p. 7 (citing authority).
[12] R. Doc. 93 at pp. 1, 2.
[13] *Id.* at pp. 2-3.
[14] *See*, R. Doc. 64-1.
[15] R. Doc. 64-2 at pp. 2, 5; R. Doc. 64-3 at pp. 9-10.

failure to undergo immediate shoulder surgery caused the "severe shoulder injury" and elbow nerve damage of which Plaintiff now complains. Regarding his shoulder injury, Dr. Casey testified that failure to treat a Grade III AC separation with surgical intervention acutely, or within a few weeks, can result in a scapula that does not rotate correctly, as well as loss of function in the shoulder, limited range of motion, weakness, and pain.[16] Dr. Casey also testified that if Plaintiff's right arm was immobilized for five months without surgical intervention, as Transocean contends, it could result in muscle atrophy, "wasting," nerve neurapraxias, and nerve issues.[17] With respect to Plaintiff's right elbow nerve damage, Dr. Ahmad testified that, "Shoulder injuries are not usually associated with cubital tunnel," explaining that, "It's uncommon because most people don't stay with their elbow bent that long time [sic]."[18] Dr. Ahmad also testified that he attributes the pain associated with Plaintiff's nerve condition to the time he was in a sling.[19] In his treatment note from January 28, 2020, submitted by Plaintiff, Dr. Ahmad's impression was that, "He has a clinically severe cubital tunnel on the right. I think it is from his time in the sling. . . . I think that's why his ulnar nerve is what it is currently."[20] Thus, there are clearly genuine issues of material fact in dispute regarding whether the underlying accident caused Plaintiff's "severe right shoulder injury and elbow nerve damage."

---

[16] R. Doc. 72-1 at pp. 6-7.
[17] *Id.* at p. 8.
[18] R. Doc. 72-4 at pp. 7-8.
[19] *Id.* at p. 6.
[20] R. Doc. 64-4.

The Court also recognizes that, "summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony."[21]  Such is the case here.  As such, the Court finds that rendering summary judgment on the issue of medical causation is inappropriate in this case.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment on Issue of Medical Causation, filed by Orlando Smith,[22] is **DENIED.**

New Orleans, Louisiana, August 23, 2021.

*[signature: Wendy B Vitter]*
**WENDY B. VITTER**
**United States District Judge**

---

[21] *Watson v. Allstate Texas Lloyd's*, 224 Fed.Appx. 335, 342 (5th Cir. 2007) (quoting *Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970)) (internal quotation marks omitted).
[22] R. Doc. 64.